IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 19, 2025

**STATE OF TENNESSEE v. JOSHUA NEIL BLAIR**

**Appeal from the Criminal Court for Campbell County**
**No. 19142    Zachary R. Walden, Judge**

_____

**No. E2025-00130-CCA-R3-CD**
_____

Defendant, Joshua Neil Blair, appeals the thirty-five-year sentence imposed for his Campbell County Criminal Court Jury convictions of felony evading arrest, vandalism, aggravated assault, and attempted second degree murder, claiming that the trial court erred by imposing partially consecutive sentences. Because the record supports the sentencing decision of the trial court, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

MATTHEW J. WILSON, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and JOHN W. CAMPBELL, SR., JJ., joined.

Andrew J. Crawford, Knoxville, Tennessee, for the appellant, Joshua Neil Blair.

Jonathan Skrmetti, Attorney General and Reporter; Park Huff, Assistant Attorney General; Jared Effler, District Attorney General; and Blake Mullins and Lindsey Cadle, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

The Campbell County Grand Jury charged Defendant via a twenty-count indictment with theft, felony evading arrest, vandalism, felony reckless endangerment, aggravated assault, and attempted second degree murder related to events that occurred on March 29, 2022, when Defendant led authorities on a high-speed chase in a stolen flatbed truck.

1

**Factual and Procedural Background**

The indictment charged the following offenses:

| Count | Offense | Victim |
|---|---|---|
| 1 | Theft of property, a Chevy Rollback Commercial Truck, valued at $10,000 or more but less than $60,000 | Shane Matchette |
| 2 | Felony evading arrest | |
| 3 | Vandalism of property, wood fences, valued at more than $1,000 | Paul Rice |
| 4 | Felony reckless endangerment | Jessica Freeman |
| 5 | Felony reckless endangerment | Lauren Freeman |
| 6 | Felony reckless endangerment | Tylee Freeman |
| 7 | Felony reckless endangerment | Maddox Freeman |
| 8 | Felony reckless endangerment | Bentley Freeman |
| 9 | Aggravated assault with a deadly weapon in front of Maynard's Salvage | Tosha Owens |
| 10 | Aggravated assault with a deadly weapon at or near Miller's Bridge | Tosha Owens |
| 11 | Aggravated assault with a deadly weapon at or near Miller's Bridge | Paul Harmon |
| 12 | Aggravated assault with a deadly weapon at or near Doakes Creek Road | Paul Harmon |
| 13 | Aggravated assault with a deadly weapon at or near the Campbell County/Claiborne County line | Paul Harmon |
| 14 | Aggravated assault with a deadly weapon | Paul Harmon |
| 15 | Vandalism of property, a 2017 Ford Explorer, valued at $10,000 or more but less than $60,000 | Campbell County Sheriff's Office |
| 16 | Vandalism of property, a 2021 Dodge Durango, valued at $10,000 or more but less than $60,000 | Campbell County Sheriff's Office |
| 17 | Attempted second degree murder at or near Miller's Bridge | Tosha Owens |
| 18 | Attempted second degree murder at or near Miller's Bridge | Paul Harmon |
| 19 | Attempted second degree murder by pursuing and ramming the patrol vehicle in the rear | Paul Harmon |
| 20 | Attempted second degree murder by ramming the patrol vehicle from the front | Paul Harmon |

Prior to trial, the State dismissed Count One, and the case proceeded to trial on the remaining counts.

The evidence adduced at trial established that Campbell County Sheriff's Department (CCSD) Sergeant Tosha Owens effectuated a traffic stop on a large rollback-style flatbed truck being driven by Defendant because the truck's license tag was displayed in the windshield rather than on the rear of the vehicle as required by law. Defendant refused to provide Sergeant Owens with his driver's license or the registration for the truck. Sergeant Owens called for backup and asked Defendant to step out of the truck. Instead of complying, Defendant drove away at a high rate of speed.

Sergeant Owens gave chase, following Defendant as he drove through a fence and across a field. She continued to follow until Defendant stopped the truck in the middle of the roadway near Maynard's Salvage. After remaining stationary for a moment, Defendant put the truck into reverse and intentionally rammed into Sergeant Owens' patrol vehicle. After hitting the patrol vehicle, Defendant again drove off at a high rate of speed, and Sergeant Owens followed as Defendant drove onto Miller's Bridge. Defendant stopped his vehicle on the bridge, and, after a few seconds, Defendant backed the large truck into Sergeant Owens' patrol vehicle three more times, turning the vehicle sideways and nearly forcing it over the side of the bridge. Sergeant Owens could not avoid Defendant because there were civilian vehicles behind hers on the bridge. Defendant's strikes disabled Sergeant Owens' vehicle, and she was forced to abandon the chase.

Jessica Freeman was driving her four children to a baseball game when Defendant drove toward them at a high rate of speed, forcing Ms. Freeman to swerve into the wood line to avoid being hit. She said that she barely avoided a head-on collision with Defendant and that she and her children were terrified during the encounter.

CCSD Corporal Paul Harmon responded to Sergeant Owens' call for assistance and initially attempted to block the roadway, but Defendant drove around him without slowing down at all. Corporal Harmon turned his patrol vehicle around and joined the chase. On the bridge, after ramming Sergeant Owens' vehicle, Defendant drove into Corporal Harmon's patrol vehicle, turning it sideways. Corporal Harmon fired two shots at Defendant, but Defendant drove away. Corporal Harmon followed, and just before the Claiborne County line, Defendant stopped the truck, turned around, and drove directly toward Corporal Harmon. Corporal Harmon drove off the road to avoid him, but Defendant deliberately drove into the rear of Corporal Harmon's vehicle hard enough to shatter the windows.

3

Defendant then turned around again, and Corporal Harmon followed. As they neared a tree line in front of a steep embankment, Defendant again drove straight at Corporal Harmon, who fired six rounds into the truck. Defendant veered at the last second, and sideswiped Corporal Harmon's vehicle, permanently disabling it. Defendant drove away through a field, and Corporal Harmon was forced to abandon the chase.

Officers eventually discovered the truck Defendant had been driving against a tree in the middle of a field. The driver's side door was open, and Defendant was gone. Officers found a camouflage cap that matched one Defendant had been seen wearing in a recent Facebook post. After learning that Defendant had active arrest warrants in Anderson and Morgan Counties, officers tracked Defendant to a nearby gas station, where he was arrested without incident. Following his arrest, Defendant gave a statement apologizing to those whose lives he endangered on March 29, 2022.

Based on this evidence, the jury rendered the following verdicts:

| Count | Offense | Verdict |
|---|---|---|
| 2 | Felony evading arrest | Guilty |
| 3 | Vandalism of property valued at more than $1,000 | Guilty |
| 4 | Felony reckless endangerment | Guilty of Misdemeanor reckless endangerment |
| 5 | Felony reckless endangerment | Guilty of Misdemeanor reckless endangerment |
| 6 | Felony reckless endangerment | Guilty of Misdemeanor reckless endangerment |
| 7 | Felony reckless endangerment | Guilty of Misdemeanor reckless endangerment |
| 8 | Felony reckless endangerment | Guilty of Misdemeanor reckless endangerment |
| 9 | Aggravated assault with a deadly weapon in front of Maynard's Salvage | Guilty |
| 10 | Aggravated assault with a deadly weapon at or near Miller's Bridge | Guilty |
| 11 | Aggravated assault with a deadly weapon at or near Miller's Bridge | Guilty |
| 12 | Aggravated assault with a deadly weapon at or near Doakes Creek Road | Guilty |

| 13 | Aggravated assault with a deadly weapon at or near the Campbell County/Claiborne County line | Guilty |
|---|---|---|
| 14 | Aggravated assault with a deadly weapon | Guilty |
| 15 | Vandalism of property valued at $10,000 or more but less than $60,000 | Guilty |
| 16 | Vandalism of property valued at $10,000 or more but less than $60,000 | Guilty |
| 17 | Attempted second degree murder at or near Miller's Bridge | Guilty |
| 18 | Attempted second degree murder at or near Miller's Bridge | Guilty of attempted reckless homicide (Dismissed by trial court) |
| 19 | Attempted second degree murder by pursuing and ramming the patrol vehicle in the rear | Guilty |
| 20 | Attempted second degree murder by ramming the patrol vehicle from the front | Guilty |

At the sentencing hearing, the trial court applied enhancement factor one to all the conviction offenses based on Defendant's extensive criminal history. *See* Tenn. Code Ann. § 40-35-114(1). The court applied enhancement factor nine, that Defendant used or displayed a deadly weapon, to all but Defendant's convictions for aggravated assault. *See id.* § 40-35-114(9). The court applied enhancement factor ten, that Defendant had no hesitation about committing a crime when the risk to human life was high, to all but Defendant's convictions for attempted second degree murder. *See id.* § 40-35-114(10). Finally, the court applied enhancement factors nineteen and twenty-seven to Defendant's convictions for aggravated assault and attempted second degree murder based on the victims' status as law enforcement officers. *See id.* § 40-35-114(19), (27). The trial court imposed the following Range I sentences:

| Count | Offense | Sentence |
|---|---|---|
| 2 | Felony evading arrest | Four years |
| 3 | Vandalism of property valued at more than $1,000 | Two years |
| 4 | Misdemeanor reckless endangerment | Eleven months and twenty-nine days at 75% |
| 5 | Misdemeanor reckless endangerment | Eleven months and twenty-nine days at 75% |
| 6 | Misdemeanor reckless endangerment | Eleven months and twenty-nine days at 75% |

5

| | | |
|---|---|---|
| 7 | Misdemeanor reckless endangerment | Eleven months and twenty-nine days at 75% |
| 8 | Misdemeanor reckless endangerment | Eleven months and twenty-nine days at 75% |
| 9 | Aggravated assault with a deadly weapon in front of Maynard's Salvage | Six years |
| 10 | Aggravated assault with a deadly weapon at or near Miller's Bridge | Six years |
| 11 | Aggravated assault with a deadly weapon at or near Miller's Bridge | Six years |
| 12 | Aggravated assault with a deadly weapon at or near Doakes Creek Road | Six years |
| 13 | Aggravated assault with a deadly weapon at or near the Campbell County/Claiborne County line | Six years |
| 14 | Aggravated assault with a deadly weapon | Six years |
| 15 | Vandalism of property, a 2017 Ford Explorer, valued at $10,000 or more but less than $60,000 | Six years |
| 16 | Vandalism of property, a 2021 Dodge Durango, valued at $10,000 or more but less than $60,000 | Six years |
| 17 | Attempted second degree murder at or near Miller's Bridge | Twelve years |
| 19 | Attempted second degree murder by pursuing and ramming the patrol vehicle in the rear | Twelve years |
| 20 | Attempted second degree murder by ramming the patrol vehicle from the front | Eleven years |

The trial court imposed partially consecutive sentences after concluding that Defendant's record of criminal activity was extensive based on the amount of criminal activity that led to the convictions as well as Defendant's numerous prior convictions, including one felony conviction. *See id.* § 40-35-115(2). The court observed that Defendant had "been picking up charges essentially most of his adult life" and that his crimes spanned "multiple counties" and a "multiplicity of victims." The court also found that Defendant was a dangerous offender because his conduct demonstrated no regard for human life and no hesitation about committing crimes causing a high risk to human life. Further, the court determined that consecutive sentences reasonably related to the offenses, which the court found to be "particularly severe." Finally, the court, citing *State v.*

*Wilkerson*,[1] found that the events leading to the convictions in this case demonstrated that Defendant "poses a danger to the public." Based upon these findings, the court ordered Counts Two through Seventeen to be served concurrently, Count Nineteen to be served consecutively to Counts Two through Seventeen, and Count Twenty to be served consecutively to Count Nineteen. After the court's alignment of Defendant's sentences, his effective sentence was thirty-five years to be served at thirty percent release eligibility.

Defendant filed a timely but unsuccessful motion for new trial followed by a timely notice of appeal.

**Analysis**

On appeal, Defendant challenges only the sentencing decision of the trial court, arguing that the trial court abused its discretion by imposing consecutive sentences and that the aggregate sentence imposed exceeds that necessary under the circumstances. The State contends that the trial court did not err and that the record supports the sentence. We agree with the State.

We review the length and manner of service of within-range sentences imposed by the trial court under an "abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010). Our supreme court has stated that "the abuse of discretion standard of appellate review accompanied by a presumption of reasonableness applies to all sentencing decisions." *State v. King*, 432 S.W.3d 316, 324 (Tenn. 2014) (citing *State v. Pollard*, 432 S.W.3d 851, 864 (Tenn. 2013)). This standard also applies to "questions related to probation or any other alternative sentence," *State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012), as well as to a trial court's decision to impose consecutive sentencing, *see Pollard*, 432 S.W.3d at 860.

Nevertheless, to be afforded deference on appeal, the trial court must "place on the record any reason for a particular sentence." *Bise*, 380 S.W.3d at 705. There is no presumption of reasonableness when the trial court fails to consider and weigh the applicable factors. *See King*, 432 S.W.3d at 327-28; *Caudle*, 388 S.W.3d at 279.

---

[1] *State v. Wilkerson*, 905 S.W.2d 933 (Tenn. 1995).

We will uphold the trial court's sentencing decision on appeal "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. A defendant bears the burden of proving that the sentence is improper. *See* Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmt.; *see also State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

Defendant does not challenge the length of the individual sentences imposed but argues only that the aggregate term of thirty-five years is excessive. Tennessee Code Annotated section 40-35-115 grants the trial court discretion to impose consecutive sentences when one or more of the statutory grounds are met. *See Pollard*, 432 S.W.3d at 859-60; *State v. Dickson*, 413 S.W.3d 735, 748 (Tenn. 2013). Here, the trial court imposed partially consecutive sentences after finding by a preponderance of the evidence that Defendant's record of "criminal activity," including the number of offenses committed in this case, was "extensive" and that Defendant "is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high[.]" Tenn. Code Ann. § 40-35-115(b)(2), (4).

When evaluating whether the proof establishes that a defendant is an offender whose record of criminal activity is extensive, trial courts may consider the following list of non-exclusive factors:

> (1) The amount of criminal activity, often the number of convictions, both currently before the trial court for sentencing and prior convictions or activity;
> (2) The time span over which the criminal activity occurred;
> (3) The frequency of criminal activity within that time span;
> (4) The geographic span over which the criminal activity occurred;
> (5) Multiplicity of victims of the criminal activity; and
> (6) Any other fact about the defendant or circumstance surrounding the criminal activity or convictions, present or prior, that informs the determination of whether an offender's record of criminal activity was considerable or large in amount, time, space, or scope.

*State v. Perry*, 656 S.W.3d 116, 129 (Tenn. 2022) (footnotes omitted). "[A] defendant need not have prior criminal convictions or activity to qualify as an offender whose record of criminal activity is extensive for purposes of section 40-35-115(b)(2)." *Id.* at 131. When the court bases consecutive sentencing upon its classification of the defendant as a dangerous offender, it must also find that an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences

reasonably relate to the severity of the offense committed. *See State v. Lane*, 3 S.W.3d 456, 460-61 (Tenn. 1999); *Wilkerson*, 905 S.W.2d at 937-38.

In our view, the record supports the trial court's finding that Defendant has a record of "criminal activity" that is "extensive" and that Defendant "is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high[.]" *Id*. § 40-35-115(b)(2), (4). The record reflects that Defendant had prior convictions for vandalism, failure to appear, resisting arrest, animal cruelty, driving on a suspended license, driving on a revoked license, driving under the influence, joyriding, leaving the scene of an accident, public intoxication, criminal trespass, and simple possession of a Schedule I controlled substance. Thus, the record supports the trial court's conclusion that based on the time, space, and scope of Defendant's criminal activity, such criminal activity was extensive pursuant to Code section 40-35-115(b)(2), and, accordingly, the trial court did not abuse its discretion by imposing partially consecutive sentences on this basis.

Defendant next asserts that the trial court failed to make the findings required by *Wilkerson* before basing consecutive sentences on his status as a "dangerous offender," insisting that the trial court's only finding was based on the size of the truck Defendant used to terrorize his victims. The record, however, belies this assertion. The trial court cited *Wilkerson* directly and concluded that consecutive sentencing was "necessary to protect the public against further criminal conduct by the defendant." *Wilkerson*, 905 S.W.2d at 939. The trial court observed that Defendant used a very large commercial truck to ram repeatedly into two patrol cars and that Defendant's behavior demonstrated that he was a danger to the public. Because the record reflects that the trial court made the appropriate findings and that those findings are supported by the facts of this case, the trial court did not abuse its discretion by imposing partially consecutive sentences based on Defendant's status as a "dangerous offender" as defined by Code section 40-35-115(b)(4).

**Conclusion**

Because the record supports the imposition of partially consecutive sentencing, we affirm the judgments of the trial court.

s/ Matthew J. Wilson
MATTHEW J. WILSON, JUDGE

9